UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| GABRIEL G RODRIGUEZ, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-73 |
| | § | |
| MICHAEL B SCHMIDT, | § | |
| | § | |
| Appellee. | § | |

## OPINION AND ORDER

The Court now considers the appeal from *In Re Gabriel Rodriguez*, in which the Bankruptcy Court denied Gabriel Rodriguez' motion to convert from Chapter 7 to Chapter 13. After considering the briefs, record, and relevant authorities, the Court **DENIES** the motion to convert from Chapter 7 to Chapter 13 and **AFFIRMS** the judgment of the Bankruptcy Court.

### I.        Background and Standard of Review

In 1943, Maria de la Pena willed most of her land to her nephew Santiago Rodriguez, whom she had helped rear.[1] In the event her nephew died "without lawful issue of his body," Maria granted a remainder to her sister and her sister's heirs ("the Filing Creditors"). Santiago adopted Gabriel Rodriguez ("Debtor"), but died without any bodily offspring of his own. A 21-year legal battle for title to the lands ensued. Meanwhile, several oil companies – including Oryx Energy Company (acquired by Anadarko in 1999) and Dewey Bellows Operating Company – paid Debtor royalties derived from the disputed lands' mineral estates.[2] In 1986, the Filing Creditors filed a petition for partition of the land.[3] In 1995, the Filing Creditors filed a petition

---

[1] Dkt. No. 4, Attach. 32 at p. 7.
[2] Dkt. No. 4, Attach. 82 at pp. 7-17.
[3] Dkt. No. 4, Attach. 29 at pp. 13-15.

for partition of the land and return of the royalties Debtor received from the harvest of the mineral estates.[4] In 2005, the Filing Creditors won title to the lands.[5]

On September 28, 2010, the Bankruptcy Court granted the Filing Creditors' Involuntary Bankruptcy Petition under Chapter 7 against Debtor.[6] On March 2, 2011, Debtor filed his debt schedules, listing claims against him in excess of $1.2 million.[7] The bulk of these claims related to the royalties Debtor received during the title dispute. On September 19, 2011, Debtor filed an amended Schedule F, again listing claims against him in excess of $1.2 million.[8] On November 28, 2011, Debtor filed an amended Schedule F which listed the worth of all royalties claims as "unknown."[9]

In September 2011, Debtor filed a request to convert from Chapter 7 to Chapter 13.[10] The Bankruptcy Court found that the Debtor exceeded the debt limitation of 11 U.S.C. §109(e), and could not propose a Chapter 13 plan that could meet the liquidation test under 11 U.S.C. §1325(a)(4).[11] As a result the Bankruptcy Court denied the Chapter 13 conversion. Debtor appealed to this Court.[12]

On review of a bankruptcy decision,[13] the Court reviews factual findings for clear error, and reviews legal conclusions and mixed questions of fact and law, *de novo*.[14] The Bankruptcy Court's ruling comprises a factual calculation of the amount of debt with and without the civil

---

[4] Dkt. No. 4, Attach. 29 at pp. 22-29.
[5] Dkt. No. 4, Attach. 29 at pp. 17-20.
[6] *See* Dkt. No. 4, Attach. 89; 11. U.S.C. §303.
[7] Dkt. No. 4, Attach. 92.
[8] Dkt. No. 4, Attach. 93.
[9] Dkt. No. 4, Attach. 67.
[10] Dkt. No. 4, Attach. 2.
[11] Dkt. No. 4 at pp. 5-6.
[12] Dkt. No. 4 at p. 3.
[13] *See* 28 U.S.C. §158(a)(1); In re Greene County Hosp., 835 F.2d 589, 595 (5th Cir. 1988).
[14] *See* 11 U.S.C 8013;  In re Mercer, 246 F.3d 391, 402 (5th Cir. 2001) ("We apply the same standard of review as did the district court: the bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and mixed questions of fact and law, de novo.").

conversion claims, and legal conclusions that Debtor could not pass the debt limitation and liquidation tests. The Court reviews the first for clear error and the last two *de novo*.

*Should the Court Look Beyond the Debtor's Schedule?*

Typically, a court will rely on the debtor's schedule unless there is evidence of bad faith.[15] Debtor contends the Court should restrict its gaze to his Amended Schedule. But according to the Trustee's and his own testimony,[16] as well as evidence proffered by the Trustee,[17] Debtor failed to list on his Schedules certain non-exempt assets, including farm equipment, real estate, and legal claims. This failure closely resembles that in *Marrama v. Citizens Bank of Massachusetts*, where the Supreme Court found that the debtor's concealment of property from his creditors before his petition for conversion to Chapter 13 constituted bad faith sufficient to justify the bankruptcy court's denial of the petition.[18] Given this evidence of bad faith, to determine Debtor's actual debts, the Court will look to the record as a whole.

## II.     Chapters 7 and 13 and the Best Interests Test

As noted above, the Bankruptcy Court rendered two legal decisions from which Debtor appeals: a decision that Debtor exceeds the debt ceilings of §109(e), and a decision that Debtor cannot pass the best interests or liquidation test under §1325(a)(4). The Court will briefly address the second, before returning to the first.

Chapter 7 bankruptcy is known as "straight bankruptcy." Chapter 7 takes a snapshot portrait of the debtor's estate at time of filing, liquidates the estate, and pays the creditors with the proceeds. Chapter 13 is the "wage-earner's bankruptcy," putting the debtor and the estate on

---

[15] *See, e.g.,* Matter of Pearson, 773 F.2d 751, 756 (6th Cir. 1985); In re Scovis, 249 F.3d 975, 982 (9th Cir. 2001) ("eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith.").

[16] *See* Dkt. No. 4, Attach. 43 at pp. 125-127; Dkt. No. 4, Attach. 87 at pp. 28-31.

[17] *See* Dkt. No. 4, Attach. 97.

[18] *See* Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). *See also* In re De La Hoz, 451 B.R. 192, 194 (Bankr. M.D. Fla. 2011).

a repayment plan. For a Chapter 13 plan to be confirmed, it must pass, among other tests, the §1325(a)(4) liquidation or best interests test. Creditors with secured claims can always take their security as full or partial payment of the debt, but creditors with unsecured claims can only receive payment from liquidation or from the debtor's repayment plan. Therefore, before a debtor may confirm a plan under Chapter 13 and thereby avoid liquidation of the estate, the Court must be assured the confirmation is in the best interest of unsecured creditors. Looking at creditors with allowed unsecured claims, then, this test compares the amount they would receive under Chapter 7 to the amount they would receive under Chapter 13; Chapter 13 must provide such creditors with at least as much payment as would Chapter 7.

Plaintiff cites to an illustrative case, *In re Lapan*.[19] There, the debtor possessed property exempt from liquidation under Chapter 7. By agreeing to forfeit certain exempt property, and otherwise reducing his and his estate's expenses under a repayment plan, the debtor ensured his unsecured creditors would receive at least as much as they would have had his estate been liquidated. The debtor's Chapter 13 plan was confirmed.

Here, Debtor's proposed plan would yield $18,900 over 5 years.[20] *Without* the Filing Creditors' claims for conversion, Debtor owes unsecured debts of only $15,203.[21] Leaving aside the interest that would accrue to the claims over 5 years, Debtor's repayment plan would quite nearly satisfy the remaining claims of $15,000. Without those conversion claims, Chapter 13 would become a viable option, because the Filing Creditors would be paid the same amount either way.

---

[19] Dkt. No. 11 at pp. 34-35; In re Lapan, 302 B.R. 184 (Bankr. S.D. Tex. 2003).
[20] Dkt. No. 4, Attach. 80.
[21] Dkt. No. 4, Attach. 17 at p. 13.

But *with* the Filing Creditors' claims for conversion, Debtor owes more than $1.2 million.[22] As the Bankruptcy Court pointed out, Debtor possesses non-exempt property worth over $400,000.[23] The non-exempt property that would become available under Chapter 7 is worth about 21 times Debtor's proposed repayment plan.[24] Thus it is apparent that the Filing Creditors would be paid much more under Chapter 7 than under Chapter 13.

To restate, without the conversion claims, Chapter 13 likely will pay Creditors as much as Chapter 7. With the conversion claims, Chapter 13 cannot possibly pay Creditors as much as Chapter 7. Therefore, the outcome of the §1325(a)(4) best interests test depends on the amount of claims levied against Debtor. The amount of debt is typically calculated under §109(e) in the debt ceiling analysis, to which the Court now turns.

### III.    The Amount of Debt and §109(e)

Under §109(e), for a Chapter 13 plan to be confirmed, the amount of noncontingent,[25] liquidated,[26] unsecured[27] debt cannot equal or exceed the statutory debt ceiling of $383,175. Thus §109(e) requires the amount of such debts to be determined in order to see if they exceed the debt limitations provision. "Although the [statutory] definition of a 'claim' explicitly includes debts that are contingent and unliquidated, § 109(e) excludes unliquidated and contingent debts from Chapter 13 eligibility computation. Section 109(e) does not, however, exclude from such calculation debts which a debtor merely disputes."[28] To effectuate the

---

[22] Dkt. No. 4, Attach. 92.

[23] This appears to be the same property Debtor failed to list on his Schedules.

[24] $400,000 / $18,900 = 21.16.

[25] *See* BLACK'S LAW DICTIONARY 410 (7th ed. 1999) ("*Contingent debt*: A debt that is not presently fixed but that may become fixed in the future with the occurrence of some event.").

[26] *See id.* at 411 ("*Unliquidated debt*: A debt that has not been reduced to a specific amount, and about which there may be a dispute.").

[27] *See id.* ("*Unsecured debt*: A debt not supported by collateral or other security.").

[28] In re Barcal, 213 B.R. 1008, 1012 (B.A.P. 8th Cir. 1997).

distinctions Congress has built into the law,[29] this Court will determine when the events giving rise to the claim occurred (contingency), and whether the debts can be readily calculated (liquidation), but avoid determining whether the debts will be adjudicated valid (liability).[30]

If the Filing Creditors' civil conversion claims are included, at $1.2 million the debts will exceed this debt ceiling, and, as noted in the previous section, will cause the best interests test to point toward Chapter 7. Debtor objects to the conversion claims' inclusion on the grounds that they are contingent and unliquidated. The Court will take these arguments in turn.

*The Claims Are Noncontingent*

Debtor argues that conversion claims should be counted as contingent, because they have not yet been adjudicated. Debtor mistakes contingency with liability; contingency possesses a different definition. When the events giving rise to the claims occurred prior to the bankruptcy petition, they are noncontingent.[31] Here, the royalties were paid prior to the filing of the petition. Disputing liability does not shift the underlying events in time.[32] The remaining question is whether the claims are liquidated.

*Liquidation and Disputed Debts*

If the worth of a claim may be calculated upfront, without the need for opinion or extensive hearings, then the debt is liquidated and may be counted.[33] "A debt is liquidated if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable

---

[29] *See* 11 U.S.C. §101 (12): "The term 'debt' means liability on a claim." *See also* 11 U.S.C. §101 (5A): "The term 'claim' means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."

[30] *See also* United States v. Verdunn, 89 F.3d 799, 802 & n. 9 (11th Cir.1996) (concluding that the overwhelming body of precedent includes disputed debts).

[31] *See* In re Loya, 123 B.R. 338, 340 (B.A.P. 9th Cir. 1991) ("The fact that most of the claims here have not been reduced to judgment does not render them contingent.").

[32] *See* In re Pennypacker, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990) ("1. Contingent debts (in the sense of dependency on a future event) involve no liability unless the condition precedent (e.g. default by a principal) occurs.  2. Disputed debts involve presumptive liability unless cut off by a condition subsequent (entry of judgment for the debtor.").

[33] *See* In re Horne, 277 B.R. 320, 326 (Bankr. E.D. Tex. 2002) (quoting the Seventh Circuit to conclude that "if judgment, discretion, or opinion . . . is required to determine the amount of the claim, it is unliquidated").

by reference to (1) an agreement or (2) to a simple mathematical formula."[34] As noted above, as a general rule, a dispute over liability does not render a debt unliquidated.[35]

Occasionally, though, the nature of the claim does allow a dispute to affect its liquidation.[36] Certain claims, typically tort claims, are assigned worth only at trial, with the practical result that the dispute over the debt affects its liquidation.[37] Certain claims, typically contract claims, have a definite worth from the beginning, with the practical result that the dispute over the debt need not affect its liquidation. This generalization should not be taken as a brightline rule.[38] If the amount of the claim – tort or contract – can be computed upfront simply and clearly, then the claim is liquidated and can be counted under §109(e).

*The Conversion Claims May Be Calculated with Simple Arithmetic*

Debtor argues that many of the Filing Creditors' claims are subject to statute of limitations defenses, and that the Texas "relation-back doctrine" fails to save the claims.[39] Debtor's repeated argument that his disputes over many of the claims will ultimately find vindication, and that this proves that the amount of the claims cannot currently be computed, blurs the line between liability and liquidation.[40] If, and only if, the amount of the conversion claims could not be computed upfront, then the claims would be unliquidated. However, these conversion claims rest simply on the amounts of oil and gas royalties Debtor allegedly

---

[34] In re Pulliam, 90 B.R. 241, 244 (Bankr. N.D. Tex. 1988).

[35] *See id*. at 246 ("The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one.").

[36] *See* In re Loya, 123 B.R. 338, 340 (B.A.P. 9th Cir. 1991) ("whether a debt is liquidated or not for purposes of 11 U.S.C. § 109(e) does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation.").

[37] *See* Denham v. Shellman Grain Elevator, Inc., 444 F.2d 1376, 1380 (5th Cir. 1971) ("unliquidated claims . . . which by their very nature are not fixed unless and until juridical award to fix liability and amount.").

[38] *See* Ohio v. Kovacs, 469 U.S. 274, 279 (1985) ("Furthermore, it is apparent that Congress desired a broad definition of a "claim" and knew how to limit the application of a provision to contracts when it desired to do so."); *See also* In re Visser, 232 B.R. 362 (Bankr. N.D. Tex. 1999) (finding a tort misappropriation claim liquidated).

[39] Dkt. No. 11 at pp. 20-33.

[40] *Id.* at pp. 19-20.

fraudulently received. The Filing Creditors claim the oil and gas royalties, have compiled their claims in a spreadsheet, and now ask for the total amount. The Court simply looks at the third column from the left on the spreadsheet, adds up the numbers, and arrives at the claimed amount.[41] This exercise calls for no discretion.[42]

This conclusion implies that the briefings on the relation-back doctrine were unnecessary to establish the amount of the claims. Had the briefings been necessary, then they themselves would constitute an extensive evidentiary hearing demonstrating the claims to be unliquidated. However, the relation-back dispute goes to liability only, not to the amount of the claims. While the Bankruptcy Court's thorough review of the case demonstrates that Debtor likely must pay the conversion claims, that probability also goes to liability, not to the amount of the claim. The Bankruptcy Court's careful finding on the amount of unsecured debt, which is not a clearly erroneous finding, suffices to draw the correct legal conclusion: the amount of debt here surpasses the §109(e) debt ceiling.

### IV.   Holding

The Court looks beyond Schedule F to assess the total worth of the claims against Debtor. The dispute over liability for the civil conversion claims does not render those claims unliquidated; they are easily totted up at over $1.2 million. The amount of debt exceeds the §109(e) debt ceiling and, when coupled with Debtor's income-to-assets ratio, causes Debtor to fail the §1325(a)(4) best interests test. As a result, two statutory provisions bar Debtor from confirming a Chapter 13 plan. The motion to convert from Chapter 7 to Chapter 13 is **DENIED**; the judgment of the Bankruptcy Court is **AFFIRMED**.

---

[41] Dkt. No. 4, Attach. 69.

[42] Because the mineral estate actually belongs to the Filing Creditors, the contract with the land should have been made with them, and the proceeds from the mineral estate belong to them. The underlying contract claim is perhaps one reason why this tort claim is susceptible of ready determination.

IT IS SO ORDERED.

DONE this 2nd day of January, 2014, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE